# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 150

### OCTOBER TERM, A.D. 2013

### December 10, 2013

THE ESTATE OF JOAN M.
MARUSICH,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF HEALTH, OFFICE
OF HEALTHCARE
FINANCING/EQUALITYCARE,

Appellee
(Respondent).

S-13-0036

*Appeal from the District Court of Albany County*
The Honorable Jeffrey A. Donnell, Judge

*Representing Appellant:*
    Craig C. Cook and Dennis C. Cook of Cook & Associates, P.C., Laramie,
    Wyoming.  Argument by Mr. Craig C. Cook.

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy
    Attorney General; Kristin M. Nuss, Senior Assistant Attorney General.  Argument
    by Ms. Nuss.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1]    After Joan M. Marusich died, the State of Wyoming ex rel. Department of Health, Office of Healthcare Financing/Equalitycare (Department) filed a lien against the home she owned with her husband, William Marusich, as tenants by the entirety.    The Department sought to recover the cost of Medicaid benefits paid on behalf of Mr. Marusich, who had predeceased Mrs. Marusich.    The Estate of Joan M. Marusich (Marusich Estate) filed a petition to remove a false lien.    The district court granted summary judgment in favor of the Department, ruling that under the relevant federal and state laws, the lien was appropriate.    After the district court entered a final judgment on the amount of the lien and denied the Marusich Estate's motion to amend the petition, the estate appealed.

[¶2]    We affirm.

## ISSUES

[¶3]    The Marusich Estate presents the following issues on appeal:

> 1.    Whether property owned by a married couple as tenants by the entireties may be subject to a lien against property in the estate of the surviving spouse for recovery of Medicaid expenses paid solely on behalf of the predeceased spouse.
>
> 2.    Whether the remedial provisions of W.S. § 29-1-601(b) may be invoked against appellee as claimant on a legally groundless and impermiss[i]ble recorded claim of lien.
>
> 3.    Whether the district court erred when it denied a motion to amend petition to conform the pleadings to the underlying cause of action in quiet title that was argued by the parties on cross motions for summary judgment.

The Department's issues are similar, though phrased differently.

## FACTS

[¶4]    The material facts of this case are undisputed.    Mr. and Mrs. Marusich had been married almost forty-four years when Mr. Marusich died in 2005.    At the time of his death and for several years before, Mr. Marusich was an inpatient in a nursing home, and he received Medicaid benefits to assist in paying for his care.    Mrs. Marusich continued

1

to live in the marital home, which they owned as "husband and wife." Mrs. Marusich did not receive Medicaid benefits and died intestate in February 2012.

[¶5]   On April 6, 2012, the Department filed a lien against the Marusiches' home to recover Medicaid expenses of $160,410.66 paid on behalf of Mr. Marusich. On April 11, 2012, the district court opened the Marusich Estate. Although notification of the probate was published in the local newspaper, the Marusich Estate did not send a notice to the Department and, accordingly, it did not file a claim in accordance with probate law. On April 19, 2012, the estate's attorney and co-administrator executed and recorded an Affidavit of Survivorship, stating that Mrs. Marusich had full survivorship interest in the marital property upon Mr. Marusich's death in 2005.

[¶6]   On August 8, 2012, the Marusich Estate filed a Petition to Remove False Lien against the Department, pursuant to Wyo. Stat. Ann. § 29-1-601(b) (LexisNexis 2013).[1] The Department answered asserting the lien was valid, counterclaimed for a judgment in the amount of the lien and requested an order allowing sale of the property to satisfy its lien. The parties filed competing motions for summary judgment, and, after a hearing, the district court granted summary judgment in favor of the Department and against the

---

[1]  Wyo. Stat. Ann. § 29-1-601(b) states in relevant part:

> (b) Any person whose real or personal property is subject to a recorded claim of lien who believes . . . that the lien claimant knew at the time of filing that the lien was groundless, [or] contained a material misstatement or false claim, may petition the court having jurisdiction over the lien of the county in which the claim of lien has been recorded for the relief provided in this subsection. The petition shall state the grounds upon which relief is requested, and shall be supported by the affidavit of the petitioner or his attorney setting forth a concise statement of the facts upon which the motion is based. . . . Upon the filing of the petition the following shall apply:

> (i) The court may enter its order, which may be granted ex parte, directing the lien claimant to appear before the court at a time no earlier than six (6) nor later than fifteen (15) days following the date of service of the petition, and order the lien claimant to show cause, if any, why the relief provided in this subsection should not be granted;
>     . . . .
> (iv) If, following a hearing on the matter the court determines . . . that the lien claimant knew at the time of filing that the lien was groundless or contained a material misstatement or false claim, the court shall issue an order striking and releasing the claim of lien and awarding damages of one thousand dollars ($1,000.00) or actual damages, whichever is greater, costs and reasonable attorneys' fees to the petitioner to be paid by the lien claimant;

> (v) If the court determines that the claim of lien is valid, the court shall issue an order so stating and shall award costs and reasonable attorneys' fees to the lien claimant to be paid by the petitioner.

Marusich Estate on the validity of the lien but concluded there was a genuine issue of fact regarding the proper amount of the lien. The parties subsequently stipulated as to the amount of Medicaid benefits paid by the Department on behalf of Mr. Marusich and the district court entered a final judgment. The district court also denied the Marusich Estate's motion to amend its petition. The Marusich Estate filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶7] With regard to the district court's grant of summary judgment in favor of the Department, we look to W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

> We review a district court's summary judgment rulings *de novo*, using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.

*Michael's Constr., Inc. v. American Nat'l Bank,* 2012 WY 76, ¶ 8, 278 P.3d 701, 703-04 (Wyo. 2012); *Grynberg v. L & R Exploration Venture,* 2011 WY 134, ¶ 16, 261 P.3d 731, 735-36 (Wyo. 2011). This case requires interpretation of the relevant statutes which is a question of law subject to our *de novo* standard of review. *Western Wyo. Constr. Co. v. Bd. of County Comm'rs of Sublette County,* 2013 WY 63, ¶¶ 10, 15, 301 P.3d 512, 514-16 (Wyo. 2013); *Vogel v. Onyx Acceptance Corp.,* 2011 WY 163, ¶ 21, 267 P.3d 1057, 1063 (Wyo. 2011).

[¶8] The district court has discretion in ruling on a motion to amend a pleading, and we will not reverse its decision unless it abused its discretion. *Jasper v. Brinckerhoff,* 2008 WY 32, ¶ 8, 179 P.3d 857, 862 (Wyo. 2008). The core inquiry under the abuse of discretion standard is whether the district court could have reasonably concluded as it did. *Fix v. South Wilderness Ranch Homeowners Ass'n,* 2012 WY 96, ¶ 12, 280 P.3d 527, 531 (Wyo. 2012); *Magin v. Solitude Homeowner's, Inc.,* 2011 WY 102, ¶ 40, 255 P.3d 920, 932 (Wyo. 2011).

## DISCUSSION

*1. Lien for Recovery of Medicaid Benefits*

[¶9]    Before discussing the specific aspects of this case, it is helpful to set out some general principles of Medicaid benefits recovery.  Medicaid is a program that provides medical benefits to qualified recipients and is designed to be a "'payer of last resort.'" *Arkansas Dep't of Health & Human Servs. v. Ahlborn,* 547 U.S. 268, 291, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006), quoting S.Rep. No. 99-146 at 313 (1985); Wyo. Stat. Ann. §§ 42-4-101, 102; *State ex rel. Dep't of Health, Div. of Healthcare Financing v. Dairyland Ins. Co.,* 11 P.3d 348, 350-51 (Wyo. 2000).  *See also Poindexter v. State of Illinois, Dep't of Human Servs.,* 869 N.E.2d 139, 149 (Ill. App. Ct. 2006).  The federal and state governments jointly fund Medicaid, and individual states administer the program.  *Cargill v. Dep't of Health, Div. of Healthcare Financing,* 967 P.2d 999, 1001 (Wyo. 1998).  Before a state can receive federal appropriations for Medicaid, a state plan must be approved by the appropriate federal agency.  *Id.  See also* 42 U.S.C. § 1396; *Dairyland,* 11 P.3d at 351.  The state plan must include provisions for collecting payment from any legally liable third party, including the estate of the Medicaid recipient or his or her spouse.  *In the Matter of the Estate of Campbell,* 950 P.2d 557, 559 (Wyo. 1997).  *See also Knori v. State of Wyoming ex rel. Dep't of Health, Office of Medicaid,* 2005 WY 48, ¶ 5, 109 P.3d 905, 907 (Wyo. 2005).

[¶10]  U.S.C. § 1346p(b)(4)(A) and (B)[2] allow the states to choose between defining the "estate" from which Medicaid recovery may be made by typical state probate law or by using an expanded definition which includes non-probate assets.  Wyoming complied with the federal mandate to enact Medicaid benefits recovery provisions and adopted the expanded definition of "estate."  *Knori,* ¶ 5, 109 P.3d at 907.

[¶11]  Wyo. Stat. Ann. § 42-4-206 (LexisNexis 2013) states in relevant part:

---

[2] Section 1346p(b) states in pertinent part:

>        (4) For purposes of this subsection, the term "estate", with respect to a deceased individual--
>
>            (A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and
>
>            (B) may include, at the option of the State (and shall include, in the case of an individual to whom paragraph (1)(C)(i) applies), any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

(a) If an individual receives any medical assistance pursuant to this chapter, upon the individual's death, if single, or upon the death of the survivor of a married couple, either of whom received medical assistance, the total amount paid for medical assistance rendered for the individual or the spouse shall be filed by the department as a claim against the estate of the individual or the estate of the surviving spouse in the court having jurisdiction to probate the estate. A claim shall be filed if medical assistance was rendered for either person under one (1) of the following circumstances:

(i) The person was fifty-five (55) years of age or older when he received medical assistance; or

(ii) The person was an inpatient in a nursing facility, intermediate care facility for people with intellectual disability or other medical institution when he received medical assistance.
. . . .

(c) The claim shall include only the total amount of medical assistance rendered after the individual attains fifty-five (55) years of age or during a period of institutionalization as described in paragraph (a)(ii) of this section, and shall not include interest. A claim for medical assistance rendered for the predeceased spouse, against the estate of a surviving spouse who did not receive medical assistance, is limited to the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage.
. . . .

(g) As used in this section:

(i) "Asset" means as defined under W.S. 42-2-401(a)(i);

(ii) "Estate" shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of this state's probate law, and includes any other real and personal property and other assets in which the individual had any legal title or interest at the time of death to the extent of that interest, including such assets conveyed to a survivor, heir or assign of the deceased

individual through joint tenancy, tenancy in common, survivorship life estate, living trust or other arrangement.[3]

[¶12] Wyo. Stat. Ann. § 42-4-207(j) specifically permits the filing of a lien against the property of a deceased recipient's estate, as that term is defined in § 42-4-206(g)(ii):

> (j) The department may file a lien against the property of any estate, as defined in W.S. 42-4-206(g), of a deceased recipient for the amount of medical assistance provided while the recipient was fifty-five (55) years of age or older or while the recipient was an inpatient in a nursing facility, intermediate care facility for people with intellectual disability or other medical institution. The department shall perfect this lien by filing a notice in the county in which the real property exists. . . .

[¶13] The parties agree the deed which granted the property to the Marusiches as "husband and wife" created a tenancy by the entirety. That is consistent with our precedent. *See, e.g.*, *Witzel v. Witzel,* 386 P.2d 103, 105 (Wyo. 1963); *Peters v. Dona,* 54 P.2d 817, 819-20 (Wyo. 1936). The Marusich Estate argues the Department was not entitled to take a lien against the house because it was owned by Mr. and Mrs. Marusich as tenants by the entirety and that tenancy was not identified in § 42-4-206(g)(ii) as part of the "estate." The district court concluded that the legislature intended that property owned in tenancy by the entirety be included within the definition of estate as an "other arrangement."

[¶14] We interpret statutes by applying the following principles:

> [Our] paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.

---

[3] There are a few minor differences between the federal and Wyoming versions but there is no argument the differences are relevant in this case. Compare U.S.C. § 1346(b)(4)(B) with § 42-4-206(g)(ii).

*Office of State Lands & Invs. v. Mule Shoe Ranch, Inc.,* 2011 WY 68, ¶ 13, 252 P.3d 951, 954–55 (Wyo. 2011), quoting *Dorr v. Smith, Keller & Assoc.,* 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo. 2010). *See also Vogel,* ¶ 21, 267 P.3d at 1063. The determination of whether a statute is clear or ambiguous is a matter of law for the court. *Office of State Lands,* ¶ 13, 252 P.3d at 955. In ascertaining the meaning of a statutory provision, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. *Mountain Cement Co. v. South of Laramie Water & Sewer Dist.,* 2011 WY 81, ¶ 13, 255 P.3d 881, 885 (Wyo. 2011).

[¶15] As we stated earlier, Wyoming adopted the expanded definition of "estate" which clearly includes non-probate assets that pass by operation of law upon the death of one of the tenants. Section 42-4-206(g)(ii). Tenancy by the entirety is not specifically listed in the statutory section; nonetheless, the definition of estate is expansive, including survivorship tenancies and "other arrangements." The clear intent of the statute is to reach any type of non-probate survivorship interest. This intent is, in fact, confirmed in other Wyoming statutes. In Wyo. Stat. Ann. § 4-10-402(c) (LexisNexis 2013) the legislature directed that the typical protections which inured to tenancies by the entirety would be preserved when the property was transferred into a living trust. However, § 4-10-402(e) also specifically states: "Nothing in this section shall be construed to limit or otherwise alter the authority granted to the department of health to assert a claim against an estate under W.S. 42-4-206 or to file a lien under W.S. 42-4-207 as could be asserted against a tenancy by the entirety . . . ." If tenancies by the entirety were not included within the definition of estate in § 42-4-206(g)(ii), § 4-10-402(e) would not be necessary. We, therefore, conclude the plain language of § 42-4-206(g)(ii) includes tenancy by the entirety as an "other arrangement" within the individual's Medicaid recovery "estate."

[¶16] The Marusich Estate also argues that a tenancy by the entirety does not include any separate interest of a spouse; hence, the first deceased spouse does not have any interest at the time of death. There are Wyoming statutes which refer to tenancy by the entirety. For example, Wyo. Stat. Ann. § 34-1-140 (LexisNexis 2013) allows property owners to create a joint tenancy or tenancy by the entirety without using a strawman. However, there are no statutes which specifically state the requirements for establishing a tenancy by the entirety or its particular attributes. Consequently, most of Wyoming's law on this matter is found in the common law, as reflected in our published precedent. *See In re Anselmi,* 52 B.R. 479, 484-85 (D.Wyo. 1985).

[¶17] Five requirements are necessary to establish a tenancy by the entirety:

> [T]here are technical requirements of a joint tenancy or tenancy by the entirety. There are four essential characteristics of either tenancy, viz., (1) unity of interest, (2) unity of title, (3) unity of time, and (4) unity of possession. For a tenancy by the entirety, there is of

course the additional characteristic of unity of person which exists only in the case of a husband and wife.

> *Wambeke v. Hopkin,* 372 P.2d 470, 475 (Wyo.1962) (citing *Peters v. Dona,* 49 Wyo. 306, 54 P.2d 817, 820 (1936); 41 C.J.S. *Husband and Wife* § 31, p. 442; 14 Am.Jur., *Cotenancy,* § 7, p. 81).

*Baker v. Speaks,* 2013 WY 24, ¶ 47, 295 P.3d 847, 858 (Wyo. 2013).

[¶18] In general, neither spouse may convey his or her interest as a tenant by the entirety without being joined in the conveyance by the other spouse. *Ward Terry & Co. v. Hensen,* 297 P.2d 213, 215 (Wyo. 1956). Property held in tenancy by the entirety is not part of the first deceased spouse's probate proceeding; instead, it passes to the surviving spouse by operation of law. *Id. See also Wambeke,* 372 P.2d at 474. As we explained many years ago in *In re Bergman's Survivorship,* 151 P.2d 360, 368 (Wyo. 1944), such property "becomes the absolute property of the survivor upon the death of a spouse and is not part of the estate of the latter." In addition to the restraints on conveyance and devise, property held in tenancy by the entirety is generally not subject to legal process to satisfy a debt of only one spouse. *Ward Terry,* 297 P.2d at 219. *See also Peters,* 54 P.2d at 820-22; *Colorado Nat'l Bank v. Miles,* 711 P.2d 390, 393-94 (Wyo. 1985). The purpose of these rules is to protect each spouse's right to possession and enjoyment of the property. *Ward Terry,* 297 P.2d at 218-20.

[¶19] The fact that neither spouse, alone, may encumber or alienate property held in tenancy by the entirety, and it may not be subject to the debt of just one spouse does not necessarily lead to a rule that such property is forever exempt from execution for one of their debts. Even the early statements of the rule contain the caveat that it only applies during the life of the surviving spouse. In *Ward Terry,* 297 P.2d at 218-19, this Court quoted *McCurdy v. Canning,* 64 Pa. 39, 41-42 (Pa. 1870) (emphasis added) as follows:

> [O]ne who, without the consent of the wife, purchases the husband's interest in real estate in which both husband and wife are seised of the entirety, and to the possession of the whole of which she is entitled equally with him, does not acquire, **during the wife's life**, any right to the possession, either jointly with her or to her entire exclusion.

Similarly, we quoted *Shinn v. Shinn,* 21 P. 813, 815 (Kan. 1889):

> **As long as the wife lives, the property cannot be legally seized or sold on execution for the husband's debts**; nor could the purchaser, if the property should be sold, take the

possession of it, for the wife has the exclusive right to the possession thereof, and to the use and control of the same, except as against her husband alone, who has a like right to the possession and to the use and control of the same.'

*Ward Terry,* 297 P.2d at 219 (emphasis added). *See also Colorado Nat'l Bank,* 711 P.2d at 393.

[¶20]  The Medicaid recovery statutes specifically recognize the surviving spouse's right to possession and enjoyment of the marital property by delaying execution until after the death of the surviving spouse.[4]  *See* § 42-4-206(a).  *See also* 79 Am.Jur.2d *Welfare* § 41 (2013).  This accommodation protects the surviving spouse from impoverishment while allowing the Department to recover Medicaid benefits when the surviving spouse dies in order to fund future services to needy persons.  79 Am.Jur.2d *Welfare* § 41; *Wisconsin Dep't of Health & Family Servs. v. Blumer,* 534 U.S. 473, 480, 122 S. Ct. 962, 151 L. Ed. 2d 935 (2002); *In re Estate of Jobe,* 590 N.W.2d 162, 166 (Minn. Ct. App. 1999).  The procedure also recognizes the surviving spouse's common law entirety interest by allowing full use of the property and its value during his or her life.  To the extent the Medicaid recovery statutes change the common law, the legislature has the prerogative to do so, provided its intent was sufficiently clear.  *Ward Terry,* 297 P.2d at 220.  *See also Sorenson v. State Farm Auto. Ins. Co.,* 2010 WY 101, ¶ 19, 234 P.3d 1233, 1238 (Wyo. 2010).  As we stated earlier, the statutes clearly indicate the legislature intended for entirety property to be available to the Department for reimbursement of Medicaid benefits once both spouses have died.

[¶21]  The Marusich Estate argues that cases from other jurisdictions support its position that the tenancy by the entirety interest is not available for Medicaid recovery, placing particular emphasis on *In re Estate of Barg,* 752 N.W.2d 52 (Minn. 2008).  In that case, the husband and wife owned property as joint tenants.  The wife entered a nursing home and received Medicaid benefits.  Prior to her death, the wife transferred her interest in the joint property to her husband.  After the husband died, the Welfare Department sought to recover Medicaid benefits paid on behalf of the wife from the husband's estate.  *Id.* at 57.  Minnesota had adopted the optional expanded definition of estate, and the Welfare Department argued it was entitled to recover against the real property because the wife had owned it "at any time during the marriage," relying on a provision similar to § 42-4-206(c).  *Id.* at 61.

[¶22]  The Minnesota Supreme Court acknowledged that its Medicaid recovery statutes modified "common law to provide for continuation of a recipient's life estate or joint

---

[4] Restrictions on recovery also apply under other circumstances, such as if the recipient, if single, or surviving spouse of a married couple is survived by a child under the age of twenty-one, etc. *See* §§ 42-4-206 through 207.  Those restrictions are not applicable here.

9

tenancy interest in real property after his death for the purposes of recovering medical assistance." *Id.* at 61. *Compare, In re Estate of Bruce,* 260 S.W.2d 398 (Mo. Ct. App. 2008) (holding the state was not allowed to recover Medicaid benefits from property previously held in tenancy by the entirety because the Missouri General Assembly had not adopted the expanded definition of estate); *Hines v. Dep't of Public Aid,* 850 N.E.2d 148, 154-55 (Ill. 2006) (holding Illinois had not adopted the more expansive definition of "estate" except where a long-term care insurance policy was involved). However, the *Barg* court also recognized the statutory language expanding the definition of estate which, like our § 42-4-206(g)(ii), covered "other assets in which the individual had any legal title or interest at the time of death," and concluded the state's authority to recover a Medicaid recipient's assets was limited to those he or she had an interest in at the time of death. *Id.* at 69-70. Because the recipient spouse, the wife, had transferred all of her interest in jointly held property to her husband prior to her death, she did not own any interest at the time of her death and the assets were not available for Medicaid benefits recovery. *Id.* *See also In re Estate of Grote,* 766 N.W.2d 82, 86-87 (Minn. Ct. App. 2009) (emphasizing the important distinction between jointly held assets transferred before the first spouse's death, which are not available for recovery, and those transferred by operation of law upon death, which are).

[¶23] In *North Dakota Dep't of Human Servs. v. Thompson,* 586 N.W.2d 847, 850 (N.D. 1998), the North Dakota Supreme Court held that the "expansive definition [of estate] is broad enough to encompass the department's claim against the estate of a deceased spouse of a deceased recipient of medical assistance benefits for the amount of medical assistance paid out, to the extent the recipient at the time of death had any title or interest in assets which were conveyed to his or her spouse" by survivorship rights. In that case, the property was held jointly by the spouses with a right of survivorship and had earlier passed to the surviving spouse by operation of law. *Id.* at 850 n.2.

[¶24] In *In re Estate of Smith,* 2006 WL 3114250 (Tenn. Ct. App. 2006), a Tennessee Court of Appeals rejected the state's effort to reach property which had originally been held by husband and wife as tenants by the entirety because the wife had transferred all of her interest to the husband before she died. However, it is significant for our purposes that the court did not suggest that property held in tenancy by the entirety is never subject to Medicaid recovery efforts. Similarly, the Missouri Court of Appeals in *Bruce,* 260 S.W.2d at 403-404, indicated the expanded definition of estate would apply to property held as tenants by the entirety.

[¶25] While *Barg* and *Smith* ultimately reached a result consistent with that sought by the Marusich Estate, they do not support its argument that the house should not be available for recovery. In fact, those cases compel the opposite conclusion. Given Mr. Marusich owned an interest in the house when he died (unlike the recipient spouses in *Barg* and *Smith),* it was within the Department's authority to file a lien even though his interest passed by operation of law to Mrs. Marusich upon his death. The present case is

10

akin to *Thompson,* in which the North Dakota Supreme Court held that survivorship assets are available for Medicaid recovery under the expanded definition of estate after the surviving spouses dies.

[¶26]  The Marusich Estate also argues that the Department could not recover because it did not file a creditor's claim in Mrs. Marusich's probate proceeding.  Sections 42-4-206 and 207 provide two separate means of recovering Medicaid payments.  Section 42-4-206 allows creditor claims in estates and § 42-4-207 allows liens.   When Medicaid reimbursement is sought against the recipient's or his or her spouse's probate estate under § 42-4-206, then the requirements for filing claims against estates under our probate law apply.  *Campbell,* 950 P.2d at 559-60.  However, given the Department's lien in this case was against Mr. Marusich's "estate" as defined in the Medicaid recovery statutes and not against the surviving spouse's probate estate, a creditor's claim in Mrs. Marusich's probate estate was unnecessary.

[¶27] The district court correctly granted summary judgment upholding the Department's lien.[5]

## 2.  Relief Under False Lien Statute

[¶28]  In a confusing argument, the Marusich Estate asserts that the remedial provisions of § 29-1-601(b) should be applied to extinguish the Department's lien and award it damages and attorney fees.  Section 29-1-601(b) provides: "Any person whose real or personal property is subject to a recorded claim of lien who believes . . . that the lien claimant knew at the time of filing that the lien was groundless, [or] contained a material misstatement or false claim, may petition the court having jurisdiction over the lien of the county in which the claim of lien has been recorded for the relief provided in this subsection."   Under the statute, if the court determines the lien was false or groundless, it must strike the lien and award the property owner damages and attorney fees.  Section 29-1-601(b)(iv).   On the other hand, if the court determines the lien was valid, then the lien claimant is entitled to costs and attorney fees.  Section 29-1-601(b)(v).

[¶29]  Section 29-1-601 does not set out the requirements for a valid lien; that is determined by applying other substantive law.   Given we have affirmed the district court's decision on the validity of the Department's Medicaid lien, there is no basis for the Marusich Estate to argue that § 29-1-601 somehow provides an additional avenue for invalidating the lien.

---

[5] Our decision that the lien is valid under the relevant statutes is dispositive; consequently, we do not need to address the Marusich Estate's argument concerning the effect of Mrs. Marusich's signature, or lack thereof, on Mr. Marusich's Medicaid application.  Additionally, any issue regarding the extent of the recipient spouse's interest in tenancy by the entirety property is not properly raised or argued in this appeal.  Accordingly, we leave that determination to another day.

11

[¶30]  As to the damages and attorney fee provisions of § 29-1-601(b), the Marusich Estate argues that they should apply if the lien was groundless (so the estate would recover), but not if the lien was valid (so the Department would recover).  The basis for the estate's argument that the Department is not entitled to recover attorney fees and costs under § 29-1-601(b) is that the Department had asserted in the district court that the statute did not apply to Medicaid liens and it was not a "lien claimant" under the provision.  The Marusich Estate seems to ignore that it is the party who initiated the action pursuant to § 29-1-601(b).  It seems disingenuous to argue the statute should apply if the ruling is in petitioner's favor but not to a ruling against it.

[¶31]  In any event, although the district court stated in its decision letter that the Department was entitled to attorney fees and costs and the Department submitted an affidavit in support of its claim, the record does not indicate that the district court ever awarded fees and costs.  In fact, the Marusich Estate concedes no such order was ever entered.  We will not, therefore, further address the issue of whether the Department was entitled to attorney fees and costs.

### 3.  *Motion to Amend Complaint*

[¶32]  In its final issue, the Marusich Estate maintains the district court erred by denying its motion to amend the pleadings to conform to the evidence presented at trial.  It sought to "provide clarity to the nature of the proceedings as an action in Quiet Title as supplemented by W.S. § 29-1-601 in conformance with Petitioner's subsequent pleadings and arguments."  The district court denied the motion to amend on the grounds it had already ruled the lien was valid and there was no additional dispute over title to the property or encumbrances.

[¶33]  W.R.C.P. 15(b) governs amendments under these circumstances:

> (b) *Amendments to Conform to the Evidence.* – When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence

12

would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

In *Jasper,* ¶ 8, 179 P.3d at 862 (citations omitted), we stated:

A motion to amend a pleading under W.R.C.P. 15(a) "shall be freely given when justice so requires." However, a district court's decision to grant or deny a motion to amend is a matter best left to the judgment of that court and we will not reverse its decision absent an abuse of discretion.

[¶34] The quiet title claim propounded by the Marusich Estate was based upon the validity of the Department's Medicaid lien. In fact, the motion to amend the petition specifically stated that the Marusich Estate "does not seek to amend or alter any factual allegation in its original Petition or prayer for relief. . . . The proposed amendment will not, in any way, alter Petitioner's legal arguments already presented in this matter." As the district court properly recognized, the validity of the lien had already been decided. Whether the Marusich Estate's claim was restyled as a quiet title action or not, the result would be the same. The district court did not abuse its discretion by denying the Marusich Estate's motion to amend the petition.

[¶35] Affirmed.

13